**The below described is SIGNED.**

**Dated: May 03, 2011**



**JOEL T. MARKER**
**U.S. Bankruptcy Judge**



_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> RONALD EDWARD HARGIS and <br> MARY O. HARGIS, <br><br> Debtors. | Bankruptcy Case No. 10-36861 <br><br> Chapter 13 |

## MEMORANDUM DECISION

The issue before the Court is whether these above-median income Debtors are entitled to an automatic and unreviewable additional operating expense deduction of $200 per vehicle on Line 27A of their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form 22C) for older or well-worn vehicles unencumbered by any secured debt. The Court requested briefing from the parties and continued the confirmation hearing to April 25, 2011 at 2:00 p.m. at which the Debtors, the Chapter 13 Trustee, and the Assistant U.S. Trustee appeared. The Court has thoroughly reviewed the briefs submitted by the Chapter 13 Trustee and the Debtors and the other documents on file, considered

1

the evidence and arguments of the parties, and conducted an independent inquiry into applicable case law. Based thereon, the Court issues the following Memorandum Decision.[1]

## I. FACTS

The relevant facts in this case are relatively straightforward. The Debtors' current monthly income as set forth in Form 22C is above the Utah median for their household size.[2] As such, the Debtors were required to complete the remainder of Form 22C to determine their monthly disposable income presumptively available for payment to general unsecured creditors over a period of 60 months.[3] The Debtors own a 2000 Ford Contour that they purchased in 2002 and that has about 143,000 miles on it. The Debtors also own a 1984 Chevy K10 that they purchased in 2001 and that has about 192,000 miles on it. Both vehicles are debt-free.[4] On Line 27A of their most recent of five Form 22Cs, filed on April 20, 2011, the Debtors claimed a vehicle operating expense deduction of $872. The Debtors arrived at this figure by taking the Local Standard of $236 per vehicle for two vehicles ($472 total) then adding $200 more for each vehicle ($400 total) as an additional operating expense due to the age and mileage of their vehicles.

Even though the Debtors' own Schedule J listed only $450 per month in actual vehicle operating expenses and even though the evidence adduced at the hearing demonstrated that the

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). Any of the findings of fact herein are also deemed to be conclusions of law and conclusions of law herein are also deemed to be findings of fact and shall be equally binding as both.
[2] Form 22C is intended to embody the detailed statutory scheme in the Bankruptcy Code commonly known as the "means test" for chapter 13 cases. The Court only refers to Form 22C for ease of reference with the understanding that the statute, not the form, controls.
[3] *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010); *Timothy v. Anderson (In re Timothy)*, 442 B.R. 28 (10th Cir. BAP 2010).
[4] The evidence actually demonstrated that the Debtors have the use of four vehicles, one of which is a company car driven by Mrs. Hargis. Under the narrow circumstances of this case, the Court concluded that retention of the two older and high-mileage vehicles at issue and consideration of their operating expenses were both appropriate.

Debtors incurred only about $100 per month in additional operating expenses for each vehicle, the Debtors argued that $200 is a standardized figure to which they are automatically entitled with no room for review or scrutiny as long as the relevant vehicles are old enough or have a high enough mileage to qualify.[5] Based on the Debtors' calculations on Form 22C, the Debtors have monthly disposable income of $200.73 that requires a total return of $12,043.80 to general unsecured creditors over the course of 60 months. The Chapter 13 Trustee objected to confirmation, arguing that the additional operating expense deduction of $400 being claimed by the Debtors would reduce the total return to general unsecured creditors over the course of 60 months by $24,000 in possible violation of the "projected disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B)[6] and that any such expense is not properly claimed on Line 27A as an automatic and unreviewable standardized deduction. The Assistant U.S. Trustee argued at the hearing in support of the Chapter 13 Trustee's position.

## II. DISCUSSION

As developed in the briefing and at the hearing, the dispute in this case is really more of degree than of kind. Neither the Chapter 13 Trustee nor the Assistant U.S. Trustee argued that additional vehicle operating expenses are never appropriate under any circumstances. Indeed, the Chapter 13 Trustee stated that he has often reviewed other such claimed expenses without objection since enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The Chapter 13 Trustee and the Assistant U.S. Trustee argued only that any such additional claimed expense should be subject to review and possible objection by parties in interest in appropriate cases, which contrasts with the Debtors' view that the additional operating expense is a standardized allowance that cannot be reviewed under any circumstances if the

---

[5] Debtors' counsel stated at the April 25, 2011 hearing that the $450 figure on Schedule J was understated even though it has been on file since February 17, 2011.
[6] All future statutory references are to title 11 of the United States Code unless otherwise specified.

3

relevant vehicles are old enough or have sufficient mileage to qualify.[7] Based on the Court's reading of the Bankruptcy Code and recent Supreme Court decisions, the Court believes that the Chapter 13 Trustee and the Assistant U.S. Trustee have the stronger position.[8]

Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [IRS] for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent." "The National and Local Standards referenced in this provision are tables that the IRS prepares listing standardized expense amounts for basic necessities. The IRS uses the standards to help calculate taxpayers' ability to pay overdue taxes. The IRS also prepares supplemental guidelines known as the Collection Financial Standards, which describe how to use the tables and what the amounts listed in them mean."[9]

The Debtors admit that the $200 additional vehicle operating expense does not appear in the Local Standards table or the Collection Financial Standards. It does not even appear in

---

[7] For example, the Chapter 13 Trustee suggested that review may be appropriate if the vehicle is six years old but only has 10,000 miles on it, the debtors have ready access to other vehicles, or no operating expenses are likely to be incurred because the vehicle has been inoperable for some time. *See* Trustee's Memorandum on Allowance of "Old Car Deduction" at n. 13.

[8] Many courts addressed the issue of the $200 additional operating expense before the Supreme Court issued its decision in *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716 (2011), but it is often unclear how the expense was treated by the courts allowing the deduction—as an automatic and unreviewable entitlement in all cases, as a presumption subject to review and rebuttal, as a "special circumstance" under § 707(b)(2)(B), or something else altogether. Similarly, it is often unclear whether the courts that disallow the deduction as part of the Local Standards would potentially allow all or part of the expense in another fashion. This Court is only aware of one written post-*Ransom* decision on the issue, *In re Baker*, No. 10-61317-13, 2011 WL 576851 (Bankr. D. Mont. Feb. 9, 2011), but the major point of contention in that case involved the applicability of the Administrative Procedures Act.

[9] *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 722 (2011) (internal citations omitted).

4

§ 5.15.1.9 of the Internal Revenue Manual (IRM) that outlines the Local Standards and discusses their application in the context of performing financial analysis. Rather, it appears in § 5.8.5.20.3 of the IRM which provides that "[i]n situations where the taxpayer has a vehicle that is currently over six years old or has reported mileage of 75,000 miles or more, an additional monthly operating expense of $200 will generally be allowed per vehicle."[10] And although the narrower Offer in Compromise provisions of IRM § 5.8 contain references to the broader Financial Analysis provisions of IRM § 5.15, the results of the financial analysis in IRM § 5.15 can lead to several possible outcomes—only one of which is consideration of an offer in compromise under IRM § 5.8.[11] The Court accordingly has little trouble in concluding as a matter of statutory interpretation that the $200 additional operating expense is not an expense "specified under the . . . Local Standards" within the meaning of § 707(b)(2)(A)(ii)(I).[12]

The Court finds additional support for this view in two recent Supreme Court decisions. In *Hamilton v. Lanning*[13] and *Ransom v. FIA Card Services, N.A.*,[14] the Supreme Court enunciated several guiding principles for lower courts to consider when interpreting the "means test" and "projected disposable income" provisions of the Bankruptcy Code for above-median income chapter 13 debtors. First, such debtors must actually incur at least some expense of the relevant kind for a deduction to be considered "applicable" to them and therefore allowable under the means test.[15] Second, the means test was designed to ensure that debtors "repay

---

[10] http://www.irs.gov/irm/part5/irm_05-008-005.html#d0e1407 (reviewed May 3, 2011).
[11] *See* IRM § 5.15.1.1.3.
[12] *See also In re May*, 390 B.R. 338 (Bankr. S.D. Ohio 2008); *In re Herbord*, Nos. 07-60311, 07-60331, 2008 WL 149972 (Bankr. S.D. Ill. Jan. 14, 2008); *In re Johnson*, No. 06-10674C-13, 2006 WL 2883243 (Bankr. M.D.N.C. Oct. 6, 2006); *In re Ford*, No. 06-11097, 2006 WL 4458358 (Bankr. N.D. Ohio July 26, 2006).
[13] 130 S. Ct. 2464 (2010).
[14] 131 S. Ct. 716 (2011).
[15] *Ransom*, 131 S. Ct. at 724. *Ransom* does not answer the question of whether the Local Standards function as standardized figures or caps, *see id.* at 727 n. 8, nor does this Court need to answer that

5

creditors the maximum they can afford," and "[t]his purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment."[16] Third, the Bankruptcy Code does not "incorporate" or otherwise "import" the IRS's guidelines in the Collection Financial Standards as controlling authority although courts may consult this material for whatever insight or persuasion that it might provide.[17] And finally, the means test is amoral; "[r]ather than effecting any broad federal policy as to saving or borrowing, the deductions serve merely to ensure that debtors in bankruptcy can afford essential items."[18] The Court believes that these principles all point in the same direction that an analytical guideline in the IRM is not a statutory entitlement in the Bankruptcy Code. At the same time, the Supreme Court recognizes that life happens and that circumstances may change during a chapter 13 case.[19] But modifications under § 1329 are the appropriate way to deal with such changes under the Bankruptcy Code, not extraordinary up-front expense deductions that are immune from substantive review.[20]

Having concluded that the $200 additional operating expense is not an automatic statutory entitlement that can be properly claimed on Line 27A of Form 22C, the Court must

---

question because the $200 additional operating expense is not part of the Local Standards. This Court also does not need to answer the question, which was not raised by the parties in any event, of whether the $200 additional operating expense can be considered under the heading of Other Necessary Expenses even though it is not one of the specified categories. *See In re Turner*, 376 B.R. 370, 375 (Bankr. D.N.H. 2007) (holding that "other necessary expenses" are limited to enumerated IRS categories).
[16] *Ransom*, 131 S. Ct. at 725 (citing *Lanning*, 130 S. Ct. at 2475-76).
[17] *Id.* at 726. The Chapter 13 Trustee correctly noted that wholesale incorporation of the IRM, the Collection Financial Standards, or other IRS guidance could work as a double-edged sword as to above-median income chapter 13 debtors.
[18] *Id.* at 730. Both the Debtors and the Chapter 13 Trustee suggested potential manipulation of the means test that might result if an additional operating expense is either universally allowed or disallowed. Apart from the fact that this Court finds that neither blanket permission nor prohibition is either required or appropriate, any such manipulation could be adequately addressed through the good faith requirements of § 1325(a)(3) and (7). *See, e.g.*, *In re Martin*, 373 B.R. 731 (Bankr. D. Utah 2007).
[19] *See Ransom*, 131 S. Ct. at 729-30.
[20] The IRM has its own modification provisions in § 5.8.9.4 (Compromise of a Compromise) to deal with changed circumstances after an offer in compromise has been accepted.

determine whether such an expense can be claimed in another fashion. There are at least three possibilities—on Line 57, on Line 60, or through a *Lanning* analysis based on substantially changed circumstances—each of which presents some difficulties. Line 57 deals with "special circumstances" under § 707(b)(2)(B), but it is unclear whether vehicle operating expenses would qualify as special circumstances when the non-exclusive statutory examples include "a serious medical condition or a call or order to active duty in the Armed Forces." There must also be "no reasonable alternative" to the additional expense, and the documentation requirements are both mandatory and onerous. Line 57 thus appears to be too narrow to encompass additional vehicle operating expenses. Conversely, allowing such expenses under a *Lanning* analysis based on substantially changed circumstances would be painting with too broad a brush. A difference in one means test line-item expense is simply insufficient to overcome the presumption that a debtor's monthly disposable income is accurately calculated on Line 59.[21]

This leaves Line 60. The difficulty with Line 60 is that § 707(b)(2)(A)(ii)(I) is its statutory basis, which could bring the analysis full circle to the National Standards, Local Standards, and Other Necessary Expenses. But this Court takes *Ransom*'s guidance on this point in finding that the IRM, while neither incorporated nor imported into the Bankruptcy Code, is instructive on the issue.[22] Just as the IRS views the additional operating expenses for older or high-mileage vehicles as reasonable deductions when working out offers in compromise with taxpayers, the Court believes that such expenses may be appropriately deducted when determining a chapter 13 debtor's reasonable ability to repay creditors the maximum that he or she can afford under a feasible plan. The Court also believes that $200 per vehicle is an

---

[21] *See, e.g.*, *In re Thiel*, --- B.R. ----, 2011 WL 799779 (Bankr. D. Idaho 2011).
[22] *Cf. In re Robinson*, No. 10-34516-KRH, 2011 WL 864937 at *9 (Bankr. E.D. Va. Mar. 10, 2011) (discussing proper use of Line 60); *In re Barbutes*, 436 B.R. 518, 527-28 (Bankr. M.D. Tenn. 2010) (same).

7

appropriate cap for any claimed additional operating expense that a chapter 13 debtor actually incurs.[23] Accordingly, this Court holds that above-median income chapter 13 debtors may claim an expense on Line 60 of Form 22C for additional vehicle operating expenses that they actually incur up to $200 per vehicle subject to review and objection by the Chapter 13 Trustee and holders of allowed unsecured claims.

## III. CONCLUSION

For the reasons set forth above, the Court concludes that above-median income chapter 13 debtors are not automatically entitled to an additional $200 operating expense deduction on Line 27A of Form 22C for each vehicle over six years old or with more than 75,000 miles; however, such an expense may be claimed on Line 60 of Form 22C in appropriate circumstances and subject to review and objection by parties in interest. In the present case, the evidence only supported an additional operating expense of $100 per vehicle. Based on the Debtors' stipulations at the conclusion of the hearing to increase their plan payments to $460 per month and to return $24,043 to general unsecured creditors, the Court concludes that the Third Amended Plan filed on February 17, 2011 now meets all the elements of § 1325(a) and is therefore confirmed. The Chapter 13 Trustee is directed to prepare a separate confirmation order in accordance with this Memorandum Decision and the Court's other findings and conclusions on the record at the April 25, 2011 hearing.



---------------------------------------------END OF DOCUMENT--------------------------------------------

---

[23] At some point, the additional operating expenses would outweigh the costs of obtaining alternate transportation. And in the absence of another metric, the Court finds $200 to be a reasonable and appropriate figure to function as a cap. It should be noted that in the District of Utah, in addition to the modification ability provided by § 1329, chapter 13 debtors may retain up to $2,000 of their annual tax refunds in certain circumstances. *See In re Skougard*, 438 B.R. 738 (Bankr. D. Utah 2010).

_____ooo0ooo_____
## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Ronald Edward Hargis
Mary O. Hargis
56 E. Cox Ln.
Midvale, UT  84047
    *Debtors*

Heath S. Isaacs
My Bankruptcy Team, LLC
1436 South Legend Hills Drive, Suite 322
Clearfield, UT  84015
    *Counsel for Debtors*

Kevin R. Anderson
405 South Main Street, Suite 600
Salt Lake City, UT  84111
    *Chapter 13 Trustee*

Vincent J. Cameron
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, UT  84111
    *Assistant U.S. Trustee*